### BURNHAM et al. v. PIDCOCK.

(Supreme Court, Trial Term, New York County.   November, 1900.)

BANKRUPTCY—DISCHARGE—JUDGMENTS FOR FRAUD.

Bankr. Act, § 17 (30 Stat. c. 541, § 17), provides that a discharge shall not release a debtor from judgments in actions for fraud, or for obtaining property by false pretenses, or for false representations, or for willful or malicious injuries to the property of another.  Plaintiff obtained a judgment against the defendant, in New Jersey, in trover, based on the wrongful conversion of property, under the common-law practice, which would lie against defendant, no matter how innocent his motives, and irrespective of his knowledge of plaintiff's rights.  Held, that a discharge obtained after judgment rendered was a good defense to an action on the judgment, since it was not rendered in an action for fraud, or for malicious injuries to the property of another.

Action by George Burnham and others against John F. Pidcock on a judgment rendered by the courts of New Jersey.  Judgment for defendant.

Stimson & Williams, for plaintiffs.
Chas. D. Ridgway, for defendant.

McADAM, J.   The action is by plaintiffs, surviving partners, to recover the sum of $14,315.56, being the amount of a judgment recovered by the partnership in the supreme court of the state of New Jersey for the wrongful conversion of two locomotives.   The defendant pleads a subsequent discharge in bankruptcy.

Section 17 of the bankruptcy act provides that:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as * * * (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another."

The plaintiffs seem to ground their right to recover on the theory that the New Jersey judgment was obtained in an action which was either for fraud or for willful and malicious injuries to their property.   It is conceded that the practice in the courts of New Jersey is the common-law practice.   The declaration alleges the loss of the plaintiffs' locomotives, that the defendant found them, and that he, well knowing "the locomotives to be the property of the plaintiffs, but contriving and fraudulently intending, craftily and subtly, to deceive and defraud the plaintiffs," etc., converted the property to his own use.   This is the ordinary, fictional form of declaration in trover. 2 Chit. Pl. (14th Am. Ed. 1869) p. 836.   The complaint in the present action specifically alleges that the suit in which the judgment was recovered was brought for the recovery of damages for the "wrongful conversion of two locomotive engines, the property of the plaintiffs."   The plaintiffs have therefore defined the nature of the action in which the judgment was recovered, and the gist of that action as thus stated is for "conversion," not "fraud."   In 1 Chit. Pl. (14th Am. Ed.) p. 146, it is said:

"The action of trover or conversion was, in its origin, an action of trespass on the case for the recovery of damages against a person who had found goods and refused to deliver them on demand to the owner, but converted them to

his own use, from which word, 'finding,' the remedy is called an 'action of trover.' * * * By a fiction of law, actions of trover were at length permitted to be brought against any person who had in his possession, by any means whatever, the personal property of another, and sold or used the same without the consent of the owner, or refused to deliver the same when demanded. The injury lies in the conversion and deprivation of the plaintiff's property, which is the gist of the action, and the statement of the finding or trover is now immaterial and not traversable; and the fact of conversion does not necessarily import an acquisition of property in the defendant. It is an action for the recovery of damages, to the extent of the value of the thing converted. The object and the result of the suit are not the recovery of the thing itself, which can only be recovered by an action of detinue or replevin. Lord Mansfield thus defined this action: 'In form it [i. e. the trover] is a fiction. In substance, it is a remedy to recover the value of the personal chattels wrongfully converted by another to his own use. The form supposes that the defendant might come lawfully by it, and, if he did not, yet by bringing this action the plaintiff waives the trespass. No damages are recoverable for the act of taking. All must be for the act of converting.' "

In Cooley, Torts (2d Ed.) p. 516, it is said:

"In form, the action is a fiction; in substance, a remedy to recover the value of personal chattels wrongfully converted by another to his own use. The form supposes the defendant may have come lawfully by the possession of the goods. This action lies and has been brought in many cases where in truth the defendant has got the possession lawfully. Where the defendant takes them wrongfully and by trespass, the plaintiff, if he sees fit to bring this action, waives the trespass and admits the possession to have been lawfully gotten. * * * There are two principal differences between the actions of trespass and trover for personalty appropriated by defendant, the first of which is that in trespass there is always either an original wrongful taking, or a taking made wrongful ab initio by subsequent misconduct, while in trover the original taking is supposed or assumed to be lawful, and often the only wrong consists in a refusal to surrender a possession which was originally rightful, but the right to which has terminated."

So that the liability of the defendant on the judgment sued upon did not depend upon either good or bad faith. If there was no wrongful taking, but a subsequent conversion, it was of necessity "wrongful" because it was illegal, but it was not necessarily fraudulent. The bankruptcy act of 1867 provided (section 33) that "no debt created by the fraud or embezzlement of the bankrupt * * * shall be discharged by proceedings in bankruptcy." In Re Whitehouse, 4 N. B. R. 63, Fed. Cas. No. 17,564, the court said that the record of the action may be looked at, "and, if it shows a material and traversable allegation of fraud as its sole foundation, the debt or demand may fairly be said to be one founded in fraud, and the action to be one founded upon a debt or claim from which the bankrupt's discharge would not release him." And the United States supreme court decided that the fraud proved must be positive fraud or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud or fraud in law. Strang v. Bradner, 114 U. S. 559, 5 Sup. Ct. 1038, 29 L. Ed. 248. See, also, Neal v. Scruggs, 95 U. S. 704, 24 L. Ed. 586, 17 N. B. R. 102. It was held under the bankruptcy law of 1841 that a judgment obtained in an action of tort was a debt dischargeable under and by force of the bankruptcy law. In re Book, 3 McLean, 317, Fed. Cas. No. 1,637. And see Comstock v. Grout, 17 Vt. 512; Crouch v. Gridley, 6 Hill, 259. And under the act of 1867 it was held that a judgment for assault and

battery was a debt dischargeable in bankruptcy. Manning v. Keyes, 9 R. I. 224. In short, unless the right of action, whatever it be, falls within one of the exceptions specified in the act, it is, after liquidation by judgment, barred by the discharge under said act. In re Book, supra. That part of the present statute bearing upon the question (section 17) has been construed in Re Rhutassel (D. C.) 96 Fed. 597; and it has been held that where a bankrupt had obtained a loan of money from a bank by means of false representations as to the amount of property he owned, and gave his promissory note for the amount, a judgment on the note is not a judgment in an action for fraud or obtaining property by false pretenses or false representations, within the meaning of the act. The court said at page 599:

"The judgment * * * which now constitutes the evidence of the claims held by the bank is not a judgment rendered in an action for fraud, or for obtaining property by false pretenses or false representations, but is founded on the express promise to repay the money loaned by the bank, * * * and therefore the judgment does not show that the debt upon which it is based was created by fraud or by false statements. If the bankrupt act provided that claims created by fraud, false statements, or false pretenses were excepted out from the bar of a discharge, then the mere fact that the claim had been put into judgment might not preclude the holder thereof from proving its original and essential nature in order to enable the court to determine whether it came within the exceptions of the statute. * * * The second clause of this section does not except out from the effect of the discharge claims created by fraud or by obtaining property by false statements, or by willful and malicious injuries to the person or property of another, but does except out judgments rendered upon causes of action of the named nature; and, therefore, to come within the exception, it must appear that the creditor holds a judgment which was rendered in an action for fraud, or for obtaining property by false pretenses or by false representations, or for willful and malicious injury to the person or property of the creditor."

Following the decisions of the federal courts, it must be held that the judgment sued upon, though founded on "wrongful conversion," is not necessarily one rendered in an action either for fraud or for willful and malicious injuries to the person or property of another, within the meaning of the act. Although the plaintiffs' claim may have been created by the fraud of the defendant, or by willful and malicious injuries to their property, the judgment was apparently not rendered in a cause of action for fraud, or for such injuries. The record of the action does not show a material and traversable allegation of fraud as its sole foundation, such as would be necessary in an action for fraud under the common-law practice of New Jersey, and it cannot be said to disclose proof of actual fraud; neither does it show allegation or proof of willful and malicious injuries to the plaintiffs' property. The declaration, as before stated, was in the ordinary form of trover; and the action would lie against the defendant, no matter how innocent his motives, and irrespective of his knowledge with reference to the rights of the owners. West Jersey R. Co. v. Trenton Car-Works Co., 32 N. J. Law, 520. The discharge in bankruptcy therefore constitutes a complete defense in bar of any recovery herein, for which reason there must be judgment in favor of the defendant.